NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-17362 |
| JUDY J. | ) ) | Superior Court No. 3AN-18-03189 PR |
| | ) ) ) ) ) ) | MEMORANDUM OPINION AND JUDGMENT* No. 1756 – March 11, 2020 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Beth Goldstein, Acting Public Defender, Anchorage, for Judy J. Maria L. Bahr, Senior Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.    INTRODUCTION

A woman who suffers from borderline personality disorder and post-traumatic stress disorder was involuntarily committed for 30 days after attempting suicide and subsequently requesting discharge from the hospital against medical advice. She appeals her commitment order, arguing that the superior court erred in finding a

---

\*    Entered under Alaska Appellate Rule 214.

nexus between her diagnosed mental illness and the risk that she would harm herself or others. We review the order under the public interest exception to the mootness doctrine and affirm the superior court's order.

## II.    FACTS AND PROCEEDINGS

Judy J.[1] suffers from the mental illnesses of borderline personality disorder and post-traumatic stress disorder (PTSD). In the fall of 2018, Judy made a serious suicide attempt in Bethel and was medivaced to Anchorage for emergency medical treatment. Judy was voluntarily admitted to Alaska Psychiatric Institute (API) on November 5, 2018. This was Judy's 40th admission to API.

In late December Judy's treating psychiatrist at API, Dr. Lee Ann Gee, filed a petition for an order authorizing hospitalization, a notice of emergency detention and application for evaluation, and a petition for 30-day commitment. A magistrate judge held a 30-day commitment hearing. Judy was represented by counsel at the hearing, but she did not testify or present any witnesses.

Dr. Gee was the only witness at the hearing and was qualified as an expert in psychiatry without objection from Judy. Dr. Gee testified that Judy was diagnosed with borderline personality disorder and PTSD. Dr. Gee explained that Judy was voluntarily admitted to API after overdosing on Tylenol, cutting her neck and abdomen with a razor blade, and placing two razor blades in her abdomen. In comparing this suicide attempt to Judy's past suicide attempts, Dr. Gee assessed it as "one of the most severe." Dr. Gee indicated that she filed the petition for 30-day commitment in response to Judy requesting a discharge from API against medical advice because Judy wanted to "kill herself."

---

[1]    A pseudonym has been used to protect the appellant's privacy.

The day before the hearing, Judy attempted to assault Dr. Gee during a conversation about continuing treatment. Per Dr. Gee, after this attempted assault, Judy fractured her own arm by punching a wall and slamming her arm into a table.

Dr. Gee stated that Judy's suicidality had not abated despite medication and explained that medications alone are often insufficient to treat borderline personality disorder and PTSD. Instead, medications could "help with mood instability and mood disturbances . . . and the anxiety that she experiences due to both of these illnesses." However, Dr. Gee opined that Judy could improve at API "if she participate[d] actively in treatment" including extensive dialectic behavioral therapy. Dr. Gee indicated that Judy's condition would deteriorate if she were discharged and that she was a danger to herself because she was "actively suicidal" on the morning of the hearing.

At the close of the hearing, the magistrate judge cited to evidence presented in the testimony to recommend finding by clear and convincing evidence that Judy suffered from mental illness and that she would likely to cause harm to herself as a result of those illnesses if discharged.

The superior court judge adopted the magistrate judge's recommendation. In support of these findings, the court made note of Judy's mental illness, observed that she was actively suicidal, and highlighted that she had broken her own arm the day before the hearing. The court also noted Dr. Gee's assessment that Judy could improve at API if she chose to engage with the proffered resources and treatment.

Judy appeals, arguing that the superior court erred because there was not sufficient evidence of a nexus between her mental illness and the risk of harm she posed to herself or others as required by AS 47.30.735.

## III.  STANDARD OF REVIEW

" 'Factual findings in involuntary commitment or medication proceedings are reviewed for clear error,' and we reverse those findings only if we have a 'definite

and firm conviction that a mistake has been made.' "[2] We review questions of statutory interpretation de novo.[3] Whether factual findings comport with statutory requirements is a question of law that we review de novo.[4] Judy's 30-day commitment period has expired; however, the public interest exception to the mootness doctrine allows us to consider involuntary commitment appeals on the merits.[5]

## IV. DISCUSSION

Judy argues that the ultimate question before the superior court was "whether clear and convincing evidence demonstrated that, *as a result of* her mental illness, [Judy] was likely to harm herself or others at the time of her commitment hearing."[6] (Emphasis added.)

Judy agrees that Dr. Gee testified "that [Judy] suffered from mental illness, had attempted to assault Dr. Gee and another patient, had engaged in serious acts of self-harm and expressed an intention to self-harm in the future" and that Judy "remained actively suicidal as of th[e] morning" of the hearing. Judy also acknowledges Dr. Gee's assessment that "[Judy's] act of self-harm had been much more severe" than prior

---

[2]    *In re Hospitalization of Jacob S.*, 384 P.3d 758, 763-64 (Alaska 2016) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007), *overruled on other grounds by In re Hospitalization of Naomi B.*, 435 P.3d 918 (Alaska 2019)).

[3]    *E.P. v. Alaska Psychiatric Inst.*, 205 P.3d 1101, 1106 (Alaska 2009).

[4]    *In re Jacob S.,* 384 P.3d at 764.

[5]    *In re Naomi B.*, 435 P.3d at 929.

[6]    A superior court may order an involuntary commitment "if it finds, by clear and convincing evidence, that the respondent is mentally ill and *as a result* is likely to cause harm to the respondent or others." AS 47.30.735(c) (emphasis added).

instances. But Judy asserts that Dr. Gee's testimony did not establish a causal link between her mental illness and her suicidality.

In response the State argues that "Dr. Gee's testimony did not need to contain any particular magic words to create the necessary link. The trial court could reasonably infer . . . that [Judy]'s patently abnormal, unhealthy behavior . . . resulted from her mental illness rather than being completely unrelated to it."

We conclude that Dr. Gee's testimony offered clear and convincing evidence that Judy was likely to cause harm to herself due to her mental illness. We also conclude that the superior court's order reflects adequate consideration of Judy's psychiatric diagnoses, self-harming behavior, and suicidality. Judy admits that "when determining whether [she] was likely to cause harm to herself or to others, the trial court could consider her recent behavior, as well as her symptoms."[7] And as we have previously reasoned, "it would defy common sense to ignore [respondent's] treatment history, which supplied context for her symptoms on the day of the hearing."[8]

It likewise would defy common sense to vacate the superior court's finding that Judy was likely to harm herself as a result of her mental illness when the court was presented with evidence of her psychiatric diagnoses, her recent severe suicide attempt, her self-harming behavior, her stated intent to discharge from the hospital to commit suicide, and her active suicidality the morning of the hearing. The court did not clearly

---

[7]  We have explained that although "a commitment order must be based on the patient's condition at the time of the commitment hearing," the "court may consider the patient's recent behavior and condition as well as the patient's symptoms on the day of the hearing." *In re Hospitalization of Tracy C.*, 249 P.3d 1085, 1092-93 (Alaska 2011).

[8]  *Id.*

err in concluding on the basis of this evidence that Judy was likely to cause harm to herself as a result of her mental illness.

Judy contrasts the alleged lack of a nexus between her mental illness and the likelihood of harm with the discussion of a nexus in *In re Hospitalization of Joan K.* and *E.P. v. Alaska Psychiatric Institute*.[9] Both E.P. and Joan K. were involuntarily committed due to the risk of harm posed by their continued substance abuse.[10] On review, we distinguished substance abuse as a result of diminished capacity brought on by mental illness from situations "in which an addicted person with full mental capacity chooses to continue abusing harmful substances, no matter how unwise one might consider that choice."[11] The facts of *E.P.* and *Joan K.* — namely, the potential alternative explanations for the substance abuse — warranted a thorough analysis of whether a causal relationship existed between the appellants' mental illnesses and the risk of harm. Unlike the parties in *E.P.* and *Joan K.*, Judy does not suggest an alternative

---

[9] *In re Hospitalization of Joan K.*, 273 P.3d 594 (Alaska 2012); *E.P. v. Alaska Psychiatric Inst.*, 205 P.3d 1101 (Alaska 2009).

[10] *In re Joan K.*, 273 P.3d at 595; *E.P.,* 205 P.3d at 1104-05. In *E.P.*, our analysis focused on whether E.P. suffered from a "mental illness" under Alaska's involuntary commitment statutes. *Id.* at 1109-10. We concluded that E.P.'s "organic brain damage," which caused impaired judgment and understanding, was a mental illness within the definition of the statute. *Id.* We affirmed his involuntary commitment because his "continued intent to huff gas, as a result of his impaired judgment and understanding" due to his organic brain damage posed a likely risk of harm. *Id.* at 1110-11. Joan K. used illicit drugs to self-medicate and cope with the stressful delusions associated with her bipolar disorder, but these drugs only further destabilized her mental state and mood. *In re Joan K.*, 273 P.3d at 599. Joan K. was experiencing a manic episode at the time of the commitment hearing, and if she were released and continued using illicit drugs, her thought processes would become "so completely disorganized" that she would have no idea "what she was doing." *Id.* at 599, 601.

[11] *In re Joan K.*, 273 P.3d at 600 (quoting *E.P.*, 205 P.3d at 1111).

cause of her suicide attempt, self-harming behavior, and ongoing suicidality.

Because the evidence provided by Dr. Gee sufficiently supported the finding that Judy was likely to harm herself as a result of her mental illness at the time of the commitment hearing, the superior court did not clearly err.

## V.    CONCLUSION

We AFFIRM the order granting the petition for involuntary commitment.